[Cite as *State v. Flood*, 2019-Ohio-2524.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-206 |
| | | and |
| v. | : | No. 18AP-738 |
| | | (C.P.C. No. 15CR-1590) |
| Kurt A. Flood, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Kurt A. Flood, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of murder, tampering with evidence, and gross abuse of a corpse. He additionally appeals from an amended judgment entry of the Franklin County Court of Common Pleas sentencing him to an aggregate sentence of 19 years to life in prison. For the following reasons, we affirm in part and reverse in part.

I. Facts and Procedural History

{¶ 2} By indictment filed March 30, 2015, plaintiff-appellee, State of Ohio, charged Flood with one count of murder in violation of R.C. 2903.02, an unclassified felony; one count of felonious assault in violation of R.C. 2903.11, a second-degree felony; one count of

endangering children in violation of R.C. 2919.22, a second-degree felony; one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony; and one count of gross abuse of a corpse in violation of R.C. 2927.01, a fifth-degree felony.  The charges related to the death of C.B.  Flood entered a plea of not guilty.

{¶ 3}   At a jury trial beginning February 6, 2018, Shane Howard, an officer with the Columbus Division of Police, testified that on December 29, 2014 he responded to a police dispatch to a report of a missing child at the Logan's Steakhouse near Easton Town Centre. Officer Howard testified that upon arriving at Logan's Steakhouse, he encountered Dainesha Stevens who informed him that she could not locate her six-year-old daughter, Ch.B.  Stevens told Officer Howard that she had been staying with a friend, Flood, and that she believed her daughter was with one of Flood's friends.  After Stevens provided police officers with a phone number of the friend, the officers were able to use a police database to determine an address associated with the phone number.  Officers went to the address, located Ch.B., and placed her in the custody of Franklin County Children's Services.

{¶ 4}   Before police located Ch.B., Stevens also provided the officers with Flood's telephone number and the telephone number of Ch.B.'s father, who lived in Frederick, Maryland.  When police called Ch.B.'s father, he informed them that he had contacted the Frederick Police Department about his two missing children. After the officers verified the father's report with the Frederick Police Department, the officers confronted Stevens with the existence of a second child, a 14-month-old baby named C.B.  Stevens told the officers that she and Flood had no heat or electricity so she had dropped C.B. on the doorstep of a random house.  Though she initially maintained her story about leaving C.B. on a random doorstep, Stevens changed her story a few days later, executing a defendant's agreement pursuant to which she testified on behalf of the state at Flood's trial.

{¶ 5}   Stevens testified that Flood urged her to come to Columbus from Maryland to escape an abusive relationship with Ch.B. and C.B.'s father.  She arrived in Columbus around December 15, 2014 and moved in with Flood.  Stevens testified that Flood became increasingly frustrated with having young children in the house, stating that Flood believed C.B. was possessed by a demon and often urged Stevens to discipline him. Stevens admitted to disciplining C.B., but she testified she only "popped him" on the buttocks with her hand

and never left any marks on him. (Tr. Vol. 2 at 276.) However, Stevens said she witnessed Flood hit C.B. with his hands, a belt, and a stick.

{¶ 6} According to Stevens' testimony, sometime around December 24, 2014, Flood convinced her to send Ch.B. to his friend's house. That evening, Stevens said Flood severely beat C.B. on his stomach and buttocks before C.B. went to bed. The next day, Stevens said C.B. was sluggish and would not breastfeed. Stevens said she noticed his feet had turned purple. The following day, December 26, 2014, Flood found C.B. stiff and cold in his bed. Stevens testified that she and Flood attempted CPR and tried to place him in a cold bathtub to revive him, but they realized he had died.

{¶ 7} Stevens testified she wanted C.B. to be buried, so she and Flood initially placed C.B.'s body in a small box but the box was not big enough. Next, Stevens said she and Flood placed C.B.'s body in a plastic grocery bag and then inside a backpack, and Stevens and Flood then walked around with the backpack trying to decide where to dispose of the body. They attempted to bury the backpack but the ground was frozen. Ultimately, Stevens said she and Flood decided to throw C.B.'s body into Big Walnut Creek which was near Flood's home. Stevens said they waited until it was dark and then rode bicycles, with the backpack in tow, to a wooded area near the creek. At that point, Stevens said Flood disappeared into the woods with the backpack and returned a few minutes later without it. Stevens said that Flood told her that he had thrown the backpack into the water.

{¶ 8} After disposing of C.B.'s body, Stevens said that C.B. and Ch.B.'s father continued to call her demanding to speak to his children. Due to his frequent phone calls, Stevens said she and Flood developed the random porch story as an explanation for C.B.'s absence. Stevens did ultimately admit to assaulting C.B.

{¶ 9} On December 31, 2014, the Columbus Police dive team located the backpack in Big Walnut Creek containing C.B.'s frozen body. The Franklin County Coroner's Officer determined C.B.'s cause of death was "violence of undetermined origin," and that homicide was the manner of death. (Tr. Vol. 1 at 244.)

{¶ 10} Michae Evans, a friend of Flood's, testified that Flood came to her home with Stevens after C.B. died. Evans testified that Flood told her he had buried a body, and that Flood confessed to her that he had hit a child, put him to bed, and found him dead the next morning. At first, Evans said she did not take Flood seriously because he was talking about

the children being possessed by demons.  However, when she saw on the news the next morning a story about a missing baby boy, she feared Flood was being serious and called the police.

{¶ 11} Flood testified in his own defense and denied ever assaulting C.B. or Ch.B. Additionally, he denied ever believing that either child was possessed by demons.  He did admit to disposing of C.B.'s body in Big Walnut Creek, but he maintained that Stevens was the one who beat C.B. and that disposing of the body was Stevens' idea.

{¶ 12} At the conclusion of the trial, the jury returned guilty verdicts on all five counts.  The matter proceeded to a sentencing hearing on February 22, 2018, during which the trial court stated Flood's convictions of felonious assault and endangering children would merge with his conviction of murder.  However, the trial court declined to merge Flood's convictions of tampering with evidence and gross abuse of a corpse, over Flood's objections.  The trial court then announced that it would sentence Flood to 15 years to life on the murder conviction, 3 years on the tampering with evidence conviction, and 1 year on the gross abuse of a corpse conviction, ordering the sentences to run consecutively for an aggregate prison sentence of 19 years to life.  However, when the trial court journalized Flood's convictions and sentence in a February 23, 2018 judgment entry, the entry stated Flood's sentences were to be served concurrent with each other for an aggregate sentence of 15 years to life.  Flood timely appealed from the February 23, 2018 judgment entry.

{¶ 13} While his appeal was pending from the February 23, 2018 judgment entry, the trial court issued an amended judgment entry on September 20, 2018.  The amended judgment entry added an additional paragraph regarding the requirements of R.C. 2929.14(C)(4) related to consecutive sentences and stated, as the court did at the sentencing hearing, that Flood's sentences are to be served consecutive to each other for an aggregate sentence of 19 years to life.  Flood then timely appealed from the amended judgment entry.  This court consolidated the matters for purposes of appeal.

II.  Assignments of Error

{¶ 14} Between his two appeals, Flood assigns the following three errors for our review:

> [1.] The trial court erred and deprived the appellant of due process of law as guaranteed by the Fourteenth Amendment to

the United States Constitution and Article One Section 10 of the Ohio Constitution by finding him guilty of murder; felonious assault; endangering children; tampering with evidence; and gross abuse of a corpse as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

[2.] The trial court erred as a matter of law by not merging the offenses of tampering with evidence and gross abuse of a corpse for purposes of sentencing.

[3.] The trial court erred to the prejudice of appellant by improperly sentencing him to consecutive terms of incarceration in contravention of Ohio's sentencing statutes.

## III. First Assignment of Error – Sufficiency and Manifest Weight of the Evidence

{¶ 15} In his first assignment of error, Flood argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Though Flood captions his assignment of error as a challenge to the sufficiency and manifest weight of the evidence related to all of his convictions, the body of his argument contests only his conviction of murder and, consistent with his admissions at trial, does not contest his convictions for tampering with evidence and gross abuse of a corpse. Thus, we will review whether Flood's conviction of murder is supported by sufficient evidence and the manifest weight of the evidence.

### A. Sufficiency of the Evidence

{¶ 16} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 17} Flood was convicted of felony murder in violation of R.C. 2903.02(B) with the underlying felony being either felonious assault or endangering children. In order to convict a defendant of felony murder in violation of R.C. 2903.02(B), the state must prove the defendant caused the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). In turn, R.C. 2903.11(A)(1) provides no person shall knowingly cause serious physical harm to another. Additionally, R.C. 2919.22(B)(1) provides no person shall recklessly abuse a child resulting in serious physical harm. *See State v. Crockett,* 10th Dist. No. 14AP-242, 2015-Ohio-2351, ¶ 26.

{¶ 18} Flood argues there was insufficient evidence to convict him of felony murder because the state did not establish the exact cause of C.B.'s death. Stated another way, Flood asserts there is no evidence demonstrating that any conduct sufficient to constitute the underlying felonies of felonious assault or endangering children was a proximate cause of C.B.'s death. Specifically, Flood relies on the findings in C.B.'s autopsy that his death was caused by "violence of an undetermined origin" with homicide as the manner of death, rather than specifying a specific cause of death. (Tr. Vol. 1 at 244.)

{¶ 19} In explaining the autopsy findings, the coroner testified that because C.B.'s body had been submerged in water for some time before police located it, he could not say definitively what caused C.B.'s death. The Supreme Court of Ohio has held that, where a body is damaged or destroyed before an official investigation into the cause of death, the coroner's determination that the victim died as the result of "homicidal violence of an undetermined origin" is a sufficient finding to support a conviction for murder. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 119 (sufficient evidence to support conviction for aggravated murder where victim's body was destroyed in a fire but coroner found the victim died "as the result of 'homicidal violence of an undetermined origin' "), citing *State v. Heinish*, 50 Ohio St.3d 231, 234-35 (1990).

{¶ 20} Stevens testified in great detail about witnessing Flood severely beat C.B. on his stomach and buttocks and that C.B. was bruised, sluggish, and his feet were turning purple the night before they found him lifeless in his crib. She also said she had witnessed Flood beat C.B. on previous occasions. Additionally, Evans testified that Flood told her he

"whooped" C.B. the night before finding him "blue" and "cold" in his crib. (Tr. Vol. 2 at 379.) Considering this evidence in a light most favorable to the state, we conclude there was sufficient evidence to establish that Flood committed both child endangering and felonious assault against C.B. resulting in serious physical harm, and that such serious physical harm was the proximate cause of C.B.'s death. Accordingly, there was sufficient evidence to support Flood's conviction for felony murder.

## B. Manifest Weight of the Evidence

{¶ 21} Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence"). However, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 22} Flood argues his conviction for murder is against the manifest weight of the evidence because the greater weight of the evidence tended to establish that Stevens, not Flood, was responsible for C.B.'s death. Essentially, Flood asserts the jury lost its way in disbelieving his testimony that he was only involved in disposing of C.B.'s body and not in

any beating of or harm to C.B.  However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.  *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.  As we noted above, the jury remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.  Given that Stevens testified in great detail about witnessing Flood severely beat C.B. on his stomach and buttocks, causing a change in C.B.'s demeanor and rendering him listless, sluggish, incapable of eating, and his feet turning purple before putting him to bed, and given that Evans testified that Flood came to her and admitted to "whooping" C.B. before disposing of his body, the jury did not clearly lose its way in disbelieving Flood's testimony.  Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding Flood committed felonious assault and/or endangering children that proximately caused C.B.'s death.

{¶ 23} Accordingly, Flood's conviction for murder is supported by sufficient evidence and is not against the manifest weight of the evidence.  We overrule Flood's first assignment of error.

## IV.  Second Assignment of Error – Merger

{¶ 24}  In his second assignment of error, Flood argues the trial court erred when it failed to merge his convictions for tampering with evidence and gross abuse of a corpse.

{¶ 25}  In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, an appellate court reviews the trial court's R.C. 2941.25 determination de novo.  *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions.  That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' "  *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 26}  R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 27} Flood argues the trial court erred when it failed to merge the offenses of tampering with evidence and gross abuse of a corpse for purposes of sentencing. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 28} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge. *Harris*, 2016-Ohio-3424, at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 29} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct. "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff* at ¶ 25.

{¶ 30} The offense of tampering with evidence provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to

impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). The offense of gross abuse of a corpse, on the other hand, provides "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." R.C. 2927.01(B).

{¶ 31} Here, Flood argues the state relied on the same conduct to prove tampering with evidence and gross abuse of a corpse. He additionally asserts all of his conduct after C.B. died had the common purposes of disposing of C.B.'s body. However, in considering how the offenses occurred, the trial court noted at the sentencing hearing that Flood used separate methodology in committing the various acts that ultimately led up to the secreting of C.B.'s body. We agree with the trial court.

{¶ 32} After C.B. died, Flood engaged in several distinct acts with the purpose of concealing the evidence of C.B.'s body from the police. First, he attempted to fit the body inside a wooden box with the intention of being able to bury the box, but the body would not fit. Then, he took the separate and distinct act of placing a plastic bag over the body and placing the body into a backpack. Flood then tried to find a place to bury the body but was stymied by the ground being frozen, again with the intent of concealing the evidence of C.B.'s body from any forthcoming investigation. When he could not bury the body, Flood rode on his bicycle with the backpack containing the body into a wooded area, again with the intent of concealing the evidence of the body. The state proved the offense of tampering with evidence from any of these separate and distinct acts. It is immaterial that these preliminary acts were not the ultimate location in which Flood chose to hide the body before police found it; the elements of tampering with evidence were satisfied once Flood removed C.B.'s body from his home in order to preclude its discovery by the police. *See State v. West*, 9th Dist. No. 22839, 2006-Ohio-2985, ¶ 27 (noting "it is irrelevant that police ultimately found" the evidence in plain sight, because a jury can "reasonably infer[ ] from the circumstances that Appellant 'removed' the [evidence] from his possession in the apartment in order to preclude it from being found in the apartment by the police"); *State v. Cunningham*, 3d Dist. No. 13-15-31, 2016-Ohio-2986, ¶ 29-30 (that an offender is ultimately not successful in concealing the evidence does not mean there was insufficient evidence to convict the offender of tampering with evidence).

{¶ 33} By contrast, to prove the offense of gross abuse of a corpse, the state relied on the evidence that Flood threw C.B.'s body into freezing cold body of water. This was an additional separate and distinct action to constitute gross abuse of a corpse. Flood attempts to conflate the two convictions because the evidence he tampered with happened to be a corpse. However, the evidence demonstrated that separate and distinct acts occurred to constitute the offense of tampering with evidence, and then separate and distinct acts occurred to constitute the offense of gross abuse of a corpse. Though it may be true that Flood's act of throwing C.B.'s body in the water would also constitute tampering with evidence, the state clearly demonstrated at trial that the tampering with evidence charge related to the distinct acts that occurred prior to Flood's disposing of C.B.'s body in the water. Stated another way, the offense of tampering with evidence was already complete before Flood engaged in separate conduct to constitute the offense of gross abuse of a corpse.

{¶ 34} Thus, because there was separate conduct to constitute the separate offenses of tampering with evidence and gross abuse of a corpse, the trial court did not err in refusing to merge the two offenses. *See State v. Abdullahi*, 10th Dist. No. 18AP-222, 2018-Ohio-5146, ¶ 43 (where there is separate conduct ascribed to the separate offenses, the offenses do not merge). We overrule Flood's second assignment of error.

## V. Third Assignment of Error — Consecutive Sentences

{¶ 35} In his third and final assignment of error, Flood argues the trial court erred in imposing consecutive sentences.

{¶ 36} Before imposing consecutive sentences, a court must make certain findings. R.C. 2929.14(C) provides as follows:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 37} Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, a trial court is required to make at least three distinct findings: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c) applies. *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.

{¶ 38} A trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and also incorporate such findings into its sentencing entry. *Bonnell* at ¶ 37. However, a trial court need not state reasons to support its findings, nor is the court "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* "[A] word-for-word recitation of the language of the statute is not required," but where "the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 39} At the February 22, 2018 sentencing hearing, in announcing it would impose consecutive sentences, the trial court stated:

Count 1 is a life sentence with Parole Authority - - that's mandated at 15 years before you go to the Parole Authority.

>The question becomes the other two counts.  Count 4 will be 36 months.  Count 5 will be 12 months.  I'm going to run all three counts consecutive now.  The finding on that is subject to 2929.14 - - 2929.14(C)(4), and I'm going to go with (B) because these were a continuous course.
>
>The death had already occurred and this was the disposal of the body afterwards.  I think that's two separate acts and a continuous course of conduct.  He could have opted [to] get the kid treatment early on after the felonious assault.  He could have opted to call the authorities.  But they went into the disposal of the body.
>
>This is not disproportionate in running them consecutive to each other.
>
>The nature of the sentence.  Logically, one is it's a life sentence anyway, so this just changes his report date to the Board.
>
>Based upon the continuous course of conduct and the decisions made throughout the process, it would not be disproportionate to go with the 19 years to the Board.  Okay?
>
>They are two separate - - well, there's three separate acts in doing it.  Whether - - the argument can be made about the tampering versus disposal of the body.
>
>You know, there were several acts of tampering that went on throughout this hearing.  In hearing the testimony and talking to the jurors, there were several things that had got their attention, whether it's the way it was disposed of, in the first attempt to put it into a box versus putting the child in - - the noncovering of the eyes.  I don't think I'll ever forget seeing those eyes throughout the exhibits.
>
>So I think it mandates consecutive sentences.  So it will be 36 months, consecutive to 12 months, consecutive to 15 to life, for 19 to life.  Okay?

(Sentencing Tr. at 9-10.)

{¶ 40} Flood argues the trial court did not make the requisite finding that consecutive sentences are necessary to protect the public from future crime or to punish the offender.  Upon review of the transcript of the sentencing hearing, we agree.  Though

we conclude the trial court made findings sufficient to constitute the second and third prongs of the *Bonnell* test outlined above, the trial court did not make any findings that we could construe as constituting the first prong of the *Bonnell* test.  The trial court simply made no mention of protecting the public from future crime by Flood or using consecutive sentences in order to punish Flood, nor did it make comments from which we could infer it had engaged in the pertinent analysis to find that consecutive sentences were necessary either to adequately protect the public or to punish Flood.  The trial court focused on the proportionality analysis without engaging in the protection/punishment analysis.

{¶ 41}  Thus, because the trial court failed to make all the findings required to impose consecutive sentences pursuant to R.C. 2929.14(C), the imposition of consecutive sentences in this case is contrary to law.  *Bonnell* at ¶ 37.  The appropriate remedy is to reverse in part and remand the matter for resentencing.  *State v. Barber*, 10th Dist. No. 14AP-557, 2015-Ohio-2653, ¶ 29-31 (failure to make sufficient findings for an appellate court to discern whether the trial court engaged in the required analysis to impose consecutive sentences requires reversal and resentencing).  We sustain Flood's third and final assignment of error.

## VI. Disposition

{¶ 42}  Based on the foregoing reasons, Flood's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, and the trial court did not err in failing to merge his convictions for tampering with evidence and gross abuse of a corpse.  However, the trial court's imposition of consecutive sentences is contrary to law.  Having overruled Flood's first and second assignments of error and having sustained Flood's third assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and we remand the matter for resentencing.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

BRUNNER and BEATTY BLUNT, JJ., concur.