[Cite as *State v. Walker*, 2021-Ohio-1381.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                   :

    Plaintiff-Appellee,                  :

                                  No. 20AP-138
v.                                              :      (C.P.C. No. 18CR-3951)

Darius L. Walker,                               :      (REGULAR CALENDAR)

    Defendant-Appellant.              :

---

D E C I S I O N

Rendered on April 20, 2021

---

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Michael P. Walton*, for appellee.

**On brief:** *Mark M. Hunt*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Darius L. Walker, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of burglary, a second-degree felony, and theft,[1] a first-degree misdemeanor. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} On August 13, 2018, appellant was indicted on one count of burglary, in violation of R.C. 2911.12, a second-degree felony, and one count of theft, in violation of R.C. 2913.02, a fifth-degree felony, amended prior to the start of trial to a misdemeanor of the

---

[1] Appellant does not challenge his conviction for theft.

first degree.  The indictment alleged the foregoing offenses occurred on or about May 30, 2018.  Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3}  On December 2, 2019, a jury trial commenced.  At trial, the following evidence was adduced.  On May 8, 2018, appellant, along with Kyrah Jones ("Kyrah"), the mother of his child, and his young child, moved into the residence of Tylondia Jones ("Tylondia"), located at 6552 Portsmouth Drive in Reynoldsburg, Ohio.  (Tr. at 48-50.) Tylondia is the mother of Kyrah.  (Tr. at 47.)  At that time, Kyrah and appellant's child, a young son, had been in the hospital for the first full year of his life and was leaving the hospital for the first time.  (Tr. at 49.)  The baby had serious medical conditions that required space to be able to accommodate medical equipment.  (Tr. at 48-50.)

{¶ 4}  Tylondia testified that she permitted appellant, Kyrah and her grandson to move in with her until they got on their feet and could find another place to live.  (Tr. at 49.)  But as time went on during the month of May, the relationship between Tylondia, appellant, and Kyrah started to deteriorate, causing problems within the home.  (Tr. at 50-52.) Tylondia testified that the relationship was declining due to her setting boundaries and rules in the home and not allowing certain things to go on in the home, and appellant failing to follow the rules of the home.  *Id.*  This led to Tylondia having a conversation with her daughter (Kyrah) early in the afternoon of May 30, 2018 to let her know that appellant was no longer welcome in the home.  (Tr. at 52.)

{¶ 5}  On May 30, 2018, at approximately 4:25 p.m., Tylondia heard a loud "boom" as she was getting out of the shower.  (Tr. at 56.)  The noise came from the nursery, and when she looked into the room she saw a hand reach through the open window.  *Id.*  Upon learning it was appellant, she went to the door to let him inside the residence so he could gather some medical equipment for his son inadvertently left behind.  (*Id.*; Tr. at 207.) All of the major medical equipment had been removed by May 29, 2018.  (Tr. at 57.)

{¶ 6}  Immediately after appellant left the residence, Tylondia sent a series of text messages to Kyrah to tell her that appellant was no longer welcome in Tylondia's home. (Tr. 55-57; Ex. B1.)  Kyrah responded with a text to Tylondia stating that was fine because they were moving out anyway.  (Tr. 58; Ex. B2.)  Tylondia testified that the last time appellant was allowed to live at her residence was the afternoon of May 30, 2018.  (Tr. at 54.)

{¶ 7}   A short time later, at approximately 5:28 p.m., Tylondia received a text message from Kyrah informing her that a charger for their son's feeding machine was still at the house and requesting that appellant be let into the house so he could pick it up.  (Tr. at 58-59; Ex. B3.)   Because Tylondia had plans to attend a graduation ceremony, she arranged for her aunt, Shaunda Hardnet ("Hardnet") to be at the residence to let appellant into the home so he could find the missing equipment.  (Tr. at 59-60.)

{¶ 8}   Hardnet testified that she met appellant at Tylondia's home, let him into the residence, and assisted appellant in gathering some things and packing his car full of belongings.  *Id.* at 119.  It became apparent that appellant was not going to be able to get everything in one trip because it was "too much stuff" and that some items were too big to go into the car.  *Id.*  Hardnet testified that appellant "knew he needed to make a second trip," but that she had to leave because she had somewhere to be by 7:30 p.m.  *Id.*  After calling Tylondia on the phone to advise her that appellant could not pick up everything in one trip, Hardnet told appellant to come back later to pick up the rest of his belongings, when Tylondia would be home and could let him back into the house.  *Id.* at 120-22.  Hardnet testified that as they were leaving the home, appellant "was saying, you know, 'well, I'm going to get my stuff.' "  *Id.* at 122.

{¶ 9}   Tylondia testified that she returned home that evening at about 9:00 p.m. and saw that all the lights were on in her house, the glass storm door was wide open as far as it could go, and a young man she had never seen before was in front of her front door, "walking away from the door down the steps. "  *Id.* 63-64.  She then observed appellant walking out the front door of the residence.  *Id.* at 64.  She asked appellant whether he had broken into her house, and appellant replied, "[y]eah, I broke in" and that he "got in through the window," pointing to a second-story right window of the living room.  *Id.* at 64-65. Tylondia proceeded to telephone the police while appellant concluded retrieving items from the residence.  *Id.*

{¶ 10} At trial, appellant denied that he told Tylondia that he broke in but testified that he could not get back in the home because all the doors were locked.  *Id.* at 219, 221. Tylondia testified that the window appellant stated he got in through had safety locks on it so that it could only be opened a small amount, and that the locks would have to be broken for the window to be opened wide enough for a person to get through.  *Id.* at 69-70.

{¶ 11} Officer Robert Smallwood of the Columbus Police Department testified that, after responding to the call by Tylondia, he determined a point of entry into the residence which was an upper right window. *Id.* at 137; Ex. A2. He further observed that the security latches on the window were broken. *Id.* at 138; Ex. A5. Officer Smallwood testified that he would consider this a forced entry. *Id.* at 139.

{¶ 12} Detective Stephen P. Borghese from the Columbus Police Department testified that he interviewed appellant on June 15, 2018. *Id.* at 147. Detective Borghese testified that appellant told him he went in through a front window by pushing it open. Id. at 150. Detective Borghese further testified that appellant admitted that he took a gaming station from the residence and left a note for Tylondia that when appellant was given back his missing Sperrys, "you get your game back." *Id.* Detective Borghese further testified that appellant told him that he knew he was not permitted inside to gather anything else without Tylondia being present. *Id.* at 149-50. Based on the interview, Detective Borghese forwarded a police packet to the Franklin County Prosecutor's Office requesting that appellant be indicted on burglary charges. *Id.* at 155-57.

{¶ 13} At the close of the state's case, outside of the presence of the jury, defense counsel moved for acquittal pursuant to Crim.R. 29. *Id.* at 173. The trial court denied the motion. *Id.* at 174. Subsequently, at the close of the defense's case, again outside of the presence of the jury, defense counsel renewed his motion for acquittal based on Crim.R. 29. *Id.* at 274. The trial court again denied the motion. *Id.* at 275.

{¶ 14} At the conclusion of the trial, the jury returned a verdict finding appellant guilty of burglary, a second-degree felony, and theft, a first-degree misdemeanor. On February 5, 2020, the trial court issued a Judgment Entry which reflected the verdict of the jury and imposed a sentence of 36 months of community control. *Id.*

{¶ 15} This timely appeal followed.

## II. Assignments of Error

{¶ 16} Appellant asserts the following two assignments of error for our review:

> [I.] The trial court erred when it denied defendant-appellant's R. 29 motion for acquittal.
>
> [II.] The verdict of burglary was against the manifest weight of the evidence.

## III. Discussion

## A. First and Second Assignments of Error – Motion for Acquittal (Sufficiency of the Evidence) and Manifest Weight of the Evidence

{¶ 17} Appellant's two assignments of error are interrelated in that they challenge both the sufficiency and weight of the evidence and we address them together. In his first assignment of error, appellant argues that the trial court erred when it denied his motion for acquittal. In his second assignment of error, appellant argues that the verdict of burglary was against the manifest weight of the evidence. We find no merit in either of appellant's contentions.

{¶ 18} Crim.R. 29(A) provides, in relevant part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether a conviction is supported by legally sufficient evidence is a question of law. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 16, citing *Thompkins*, 78 Ohio St.3d 380 at 386.

{¶ 19} In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In conducting a review of the sufficiency of the evidence, " 'an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *Flood*, 2019-Ohio-2524 at ¶ 16, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4, citing *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16.

{¶ 20} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of

inducing belief." *Cassell*, 2010-Ohio-1881 at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins*, 78 Ohio St.3d 380 at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 21} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 22} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 23} Appellant challenges his conviction on the count of burglary, in violation of R.C. 2911.12. R.C. 2911.12 provides, in relevant part:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense * * *

R.C. 2911.12(A)(1) and (2). A person commits a "trespass" by, without privilege to do so, knowingly entering or remaining on the land or premises of another. R.C. 2911.21(A)(1).

{¶ 24} In his challenge to the sufficiency of the evidence, appellant argues that the state failed to meet its burden of proving that appellant trespassed in the Portsmouth Drive address during the evening of May 30, 2018. (Appellant's Brief at 10-11.) Specifically, appellant asserts that the evidence did not show that he no longer lived at Tylondia Jones' residence as of May 30, 2018 at approximately 9:00 p.m., and therefore did not show he was trespassing on her property.

{¶ 25} The evidence presented by the state included Tylondia's testimony that on May 29, 2018, appellant had removed all of his son's medical equipment out of the residence. (Tr. at 57.) Tylondia also testified that the last time appellant was permitted to live at her residence was the afternoon of May 30, 2018. (Tr. at 54.) Additionally, evidence in the form of screen shots of text messages sent from Tylondia to Kyrah at 4:25 p.m. on May 30, 2018 was admitted which supported Tylondia's testimony that appellant was no longer allowed in the home as of, at the latest, the afternoon of May 30, 2018, e.g., "as of yesterday and today he is NOT welcome back in my house for no reason...if I catch him on my property I will call the police and I am filing a restraining order against him...ONLY You and the baby are welcome...DARIUS 'SR.' is NOT!!!!!!!" *Id.* at 57; Ex. B1.

{¶ 26} In addition, Hardnet provided testimony corroborating Tylondia's testimony that appellant was not permitted to be inside the residence as of the evening of May 30, 2018, and that was why Tylondia had made arrangements for Hardnet to meet appellant at the house to let him in to get some personal belongings left behind. *Id.* at 118-20. Hardnet also testified that she told appellant he needed to wait until Tylondia returned home to get the remainder of his belongings. *Id.* at 121-22. Detective Borghese testified that appellant told him that he had moved out of the residence by May 29, 2018. *Id..* at 153. Detective Borghese further testified that appellant told him that he knew he was not permitted inside to gather anything else without Tylondia being present. *Id.* at 149-50.

{¶ 27} The foregoing evidence is entirely consistent with a jury finding that appellant no longer lived at the Portsmouth Drive address during the evening of May 30, 2018 at approximately 9:00 p.m. Construing the evidence in favor of the state, we conclude it was sufficient to allow the jury to find that appellant trespassed on the Portsmouth Drive address during the evening of May 30, 2018, as required by R.C. 2911.12(A)(1) and (2). Therefore, the trial court properly overruled appellant's motions for acquittal made pursuant to Crim.R. 29.

{¶ 28} The manifest weight of the evidence also supports appellant's conviction for burglary. Although appellant argues that he was "unaware and not notified of Tylondia's condition that he was not to be at the house alone," (Appellant's Brief at 13), as discussed above, the evidence shows otherwise. Two witnesses, Tylondia and Hardnet, testified that appellant was not permitted in the residence by himself after the afternoon of May 30, 2018. Appellant testified that neither he, his son, nor Kyrah stayed overnight at the residence on May 28, 29, or 30, 2018. (Tr. at 237-38.) And, Detective Borghese testified appellant told him he was aware that he was not allowed to retrieve any personal belongings without Tylondia being there.

{¶ 29} As set forth above, under a manifest weight of the evidence analysis, although we are able to consider the credibility of the witnesses in conducting our review, "we are guided by the presumption that the jury * * * ' is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proferred testimony.' " *Cattledge*, 2010-Ohio-4953, at ¶ 6, quoting *Seasons Coal Co.* 10 Ohio St.3d 77, at 80. In this case, the jury was entirely free to believe

Tylondia, Hardnet, and Detective Borghese, and to disbelieve appellant, and appellant's conviction is not against the manifest weight of the evidence merely because the jury found the other witness's testimony more credible than that of appellant. *See Gullick*, 2014-Ohio-1642 at ¶ 11. Indeed, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Hood*, 10th Dist. No. 15AP-656, 2015-Ohio-5373, ¶ 11, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. In short, in engaging in the limited weighing of the evidence which we are permitted, we cannot say the jury clearly lost its way when it found appellant guilty of burglary beyond a reasonable doubt. Accordingly, we find that the manifest weight of the evidence supports appellant's conviction.

{¶ 30} In sum, appellant has failed to demonstrate that the evidence was insufficient or that the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction on the burglary count must be reversed and a new trial ordered. Because appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, his first and second assignments of error are overruled.

## IV. Disposition

{¶ 31} Having overruled both appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

---