[Cite as *State v. Cunningham*, 2016-Ohio-2986.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,           CASE NO. 13-15-31

    v.

ANTHONY D. CUNNINGHAM,         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 15 CR 0089

**Judgment Affirmed**

Date of Decision: May 16, 2016

APPEARANCES:

    *Tim A. Dugan* for Appellant

    *Pamela J. Cordy* for Appellee

Case No. 13-15-31

**SHAW, P.J.**

{¶1} Defendant-appellant Anthony D. Cunningham ("Cunningham") brings this appeal from the August 19, 2015 judgment of the Seneca County Common Pleas Court sentencing Cunningham to 30 months in prison after Cunningham was convicted in a jury trial of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, and Attempted Tampering with Evidence in violation of R.C. 2923.02(A) and R.C. 2921.12(A)(1), a felony of the fourth degree.

*Relevant Facts and Procedural History*

{¶2} On May 13, 2015, Cunningham was indicted for Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, and Attempted Tampering with Evidence in violation of R.C. 2923.02(A) and R.C. 2921.12(A)(1), a felony of the fourth degree.[1]

{¶3} On May 14, 2015, Cunningham was arraigned and he pled not guilty to the charges.

{¶4} On July 6-7, 2015, the case proceeded to a jury trial. At trial the State presented the testimony of six witnesses and introduced a number of exhibits into evidence including the revolver in question, photographs of bullets that Cunningham had on or about his person when he was detained, and jailhouse calls

---

[1] The Having Weapons While Under Disability charge also contained a specification that the .22 caliber six-shot revolver Cunningham was alleged to have was subject to forfeiture as an instrumentality used in the commission of the offense pursuant to R.C. 2981.02.

-2-

made by Cunningham wherein he suggested to his girlfriend that she should claim the revolver was hers. Cunningham's attorney cross-examined the State's witnesses but elected not to present any evidence. The jury ultimately found Cunningham guilty of both crimes.[2]

{¶5} On August 18, 2015, the trial court held a sentencing hearing. At the sentencing hearing the State requested that Cunningham be sentenced to 30 months in prison on the Having Weapons While Under Disability charge and 15 months in prison on the Attempted Tampering with Evidence charge. The State recommended that the sentences be served consecutively due to Cunningham's lengthy criminal history, which included as many as 9 prior prison terms. Cunningham gave a brief statement in mitigation, as did his attorney, requesting that Cunningham be placed on community control. After hearing the arguments of the parties, the trial court stated that it considered the appropriate statutory sentencing factors and sentenced Cunningham to serve 30 months in prison on the Having Weapons While Under Disability charge and 15 months in prison on the Attempted Tampering with Evidence charge. The trial court ordered that the sentences be served concurrently, for an aggregate prison term of 30 months.

---

[2] The jury also separately found that the revolver was an instrumentality used in the commission of the offense and was subject to forfeiture.

{¶6} A judgment entry memorializing Cunningham's sentence was filed August 19, 2015. It is from this judgment that Cunningham appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE STATE OF OHIO FAILED TO PRODUCE LEGALLY SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF ATTEMPTED TAMPERING WITH EVIDENCE.**

**ASSIGNMENT OF ERROR 2**
**APPELLANT'S CONVICTIONS FELL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶7} Both assignments of error deal with a discussion of the evidence, therefore we elect to address them together.

## I. First and Second Assignments of Error

{¶8} In Cunningham's first assignment of error, he argues that there was insufficient evidence presented to convict him of Attempted Tampering with Evidence.[3] In Cunningham's second assignment of error he argues that his convictions for Attempted Tampering with Evidence and Having Weapons While Under Disability were against the manifest weight of the evidence. As both assignments of error challenge the convictions based on the evidence, we will begin our review by summarizing the evidence presented at trial.

---

[3] Cunningham does not challenge whether there was sufficient evidence presented to convict him of Having Weapons While Under Disability.

### a. Trial Evidence

{¶9} Testimony at trial indicated that the incidents in question occurred at 216 East Sixth Street, a two-story residence in Fostoria, Ohio. Cunningham's girlfriend, Marcia Zachrich, lived at the residence along with her younger sister Bobbi Lane, Lane's children, Marcia's older brother Brandon Murphy, and their mother. According to Bobbi Lane, Cunningham was regularly at the residence when Marcia was there, which was "[a]bout every other day, [or] every day." (Tr. at 210). Testimony indicated that Cunningham and Marcia slept in Brandon Murphy's door-less, upstairs bedroom when Murphy was not home, which Murphy testified was about half the time. Lane testified that sometimes even when Murphy was at home he would sleep on the couch and allow Marcia and Cunningham to sleep in his bedroom.

{¶10} Regarding the incidents in question, Brandon Murphy testified that on April 28, 2015, at approximately 8:30 p.m. he was at his residence along with his sister Bobbi Lane, Lane's two children, Marcia, and Cunningham. Murphy testified that at one point he was in his upstairs bedroom wrestling with Lane's children when the 3-year-old child pointed a gun at him. Murphy testified that he thought the gun was a toy at first and he took the gun from the child, then he realized it was a real gun. Murphy testified that he took the gun downstairs and handed it to Cunningham. Murphy testified specifically that the gun was not his and that he did not know either of his sisters to own a gun.

{¶11} Lane testified that she was present when Murphy came downstairs and that he showed her the gun before handing it to Cunningham. Lane testified that the gun was not hers, and that she did not know Marcia or Murphy to own a gun. Lane testified that she said "[t]here shouldn't be a gun around kids," so Murphy gave the gun to Cunningham. (Tr. at 212). Lane testified that Cunningham took the gun from Murphy and put it in the trunk of Marcia's car. Lane testified that she watched Cunningham hide the gun, specifically seeing him put the gun inside a bag and then put it into the trunk of Marcia's car.

{¶12} Lane testified that after Cunningham hid the gun in the trunk she walked to the "Dollar Store" with Marcia and Marcia "called it in," meaning Marcia called the police about Cunningham having a gun. (Tr. at 216). Lane testified that Marcia told the police her name was Bobbi Lane because Marcia had an active warrant out for her arrest. Lane testified that Marcia informed the police that Cunningham was at her house with a gun.

{¶13} Three Fostoria City Police Department officers responded to a report that there was a "disturbance" at the residence and that Cunningham had a firearm: Officer Lucas Elchert, Sergeant William Campbell, and Officer Cory Brian. (Tr. at 144). All three officers testified at trial. The officers arrived at the scene separately but all nearly at the same time. Sergeant Campbell testified that he was the first to arrive on scene and that when he arrived at the residence Cunningham

was sitting on the front porch. All three officers testified that they were familiar with Cunningham, having dealt with him before.

{¶14} Sergeant Campbell testified that when he arrived he spoke briefly to Cunningham and then went inside the residence and spoke with Murphy and Murphy's mother while the other officers "maintain[ed] security." (Tr. at 146). Sergeant Campbell testified that Murphy and his mother advised him that there was a weapon and it was either on "Cunningham's person or outside somewhere." (Tr. at 147).

{¶15} Officer Elchert testified that upon his arrival he asked Cunningham where Bobbi Lane was, who the officers believed had called the police for a disturbance and a man with a gun. Cunningham informed Officer Elchert that Lane had gone to the store, and Lane returned shortly thereafter. However, Marcia did not return with Lane, so Officer Brian went to look for her.

{¶16} Officer Brian testified that he located Marcia and Marcia told him that she did not want to go back to her residence because she was scared of Cunningham. Marcia also told Officer Brian that Cunningham had put a gun in her car. Sergeant Campbell testified that Bobbi Lane separately told him that she saw Cunningham put the gun into Marcia's trunk. In addition, the officers indicated that Marcia and Lane had informed them that the gun Cunningham put into Marcia's trunk was Cunningham's. Officer Brian testified that Marcia gave the officers permission to search her car, so the officers searched the vehicle.

{¶17} Officer Elchert and Sergeant Campbell testified that they searched Marcia's vehicle and located a revolver wrapped in a bag hidden amongst "a large amount of men's clothing in the trunk of the vehicle." (Tr. at 116). Sergeant Campbell testified that the revolver was inside a laundry basket "plumb full of clothes" in a white plastic bag that was "folded up and kind of stuffed in the middle of those clothes." (Tr. at 149).

{¶18} Officer Elchert testified that there was one spent shell casing in the cylinder of the revolver. Officer Elchert testified that the gun was made safe and then Cunningham was detained. Sergeant Campbell testified that Cunningham was detained due to the fact that Cunningham had prior felony convictions for drug trafficking, which prohibited him from having a firearm. Certified copies of two separate judgment entries indicating Cunningham's prior felony drug convictions were entered into the record.

{¶19} Officer Elchert testified that Cunningham was patted down for weapons when he was detained and that he was then placed in a police cruiser. However, Officer Elchert testified that Bobbi Lane eventually informed the officers that she believed Cunningham had bullets on him, so Cunningham was searched a second time.

{¶20} Officer Elchert testified that when the officers went to get Cunningham out of the cruiser to search him the second time, there was a .22 caliber cartridge on the seat of the cruiser that had not been there before. Officer

Elchert testified that there was another cartridge located by Cunningham's shoe. Officer Brian testified that Cunningham then admitted to him that he had two rounds in his hand, wrapped in a white rag or tissue. Officer Brian testified that the cartridges located with or near Cunningham matched the spent shell casing in the revolver.

{¶21} Officer Brian testified that he test-fired the revolver and found it to be a working firearm. A report stating as much was introduced into evidence. The revolver itself and photographs of the bullets were also introduced into evidence. One of the photographs depicted where the .22 caliber cartridge was located in the back seat of the cruiser after Cunningham was removed from it to be searched a second time for bullets. A second photograph illustrated where a cartridge was located next to Cunningham's left shoe outside of the vehicle, and a third photograph depicted the cylinder of the revolver with the spent shell casing.

{¶22} The State also introduced three audio recordings of jailhouse calls made by Cunningham to Marcia after he was charged with the offenses in this case. The following excerpts are taken from the first phone exchange between Cunningham and Marcia.

> **CUNNINGHAM: * * * [T]ell him it's not mine. You know what I'm saying? That's it.**

> **MARCIA: I don't know who to tell him it belonged to, though.**

**CUNNINGHAM:** You don't have to tell him it belonged to nobody. Tell him it belongs to you. They can't do nothing to you.

**MARCIA: Okay.**

**CUNNINGHAM: They can't do nothing to you. You can say it belonged to me. You were mad at me. I mean, you know, and you not going to trial, do you know what I'm saying.**

**MARCIA: Okay.**

\* \* \*

**CUNNINGHAM: Okay. You know what I'm saying? I mean, if they take it to trial, then they going to put you on the stand, your sister on the stand, and your brother on the stand. You know what I'm saying?**

**MARCIA: Right. I don't want to do that.**

**CUNNINGHAM: And I'm not trying to go that far. You know what I'm saying? It ain't got to go that far. You know what I'm saying. Then they'll want you to tell the truth, because, I mean, I told the truth? You know what I'm saying?**

**And my phone, they got my phone as evidence when I text you and told you the kids had found it, come and get that, you know what I'm saying? Come and get that. But just do something about. [sic] They got my phone saying that.**

**MARCIA: Right.**

\* \* \*

**MARCIA: So what's going to happen when I call your lawyer and shit and they got your phone that says otherwise?**

**CUNNINGHAM: I mean, they got my phone. It [sic] not nothing that going to hurt me by me saying that. I mean, it actually will help me because, you know what I'm saying, I'm**

**not allowed to have a pistol in my possession no way. You know what I'm saying?**

**I mean, really, they cannot put that on me when everybody else in that house, I mean, as long as it wasn't in my possession.**

**MARCIA: Right.**

**CUNNINGHAM: As long as it wasn't in my possession. And it wasn't in my possession when it was in the house, you know what I'm saying?**

**MARCIA: Okay.**

(Tr. at 163-165); (State's Ex. 1).

{¶23} The following exchange is taken from the third jailhouse call between Cunningham and Marcia.

**CUNNINGHAM: Let him know it wasn't mine and what you got to do to get the charge off of me because you was upset with me and everything else, and go from there.**

**MARCIA: Okay.**

**CUNNINGHAM: Because I go to court for the arraignment next week. And after that, I'll be going to trial on this case. You know what I'm saying? They can't do nothing about you if it's yours. I just cannot have it in my thing, you know what I'm saying?**

**MARCIA: What?**

**CUNNINGHAM: Huh?**

**MARCIA: What?**

**CUNNINGHAM: I said I cannot have it on me, unless – you know what I'm saying? I can't have no pistol on me, you know what I'm saying? And you can get me out of this.**

**MARCIA: I know.  We'll work it out.**

(Tr. at 172-173); (State's Ex. 1).

{¶24} We would note that Marcia did not testify at trial, despite being subpoenaed to be present.  Lane testified that she had expected Marcia to go to the trial with her and their brother Brandon; however, Lane testified she was unsure where Marcia was.  A bench warrant was issued for Marcia after an investigator with the prosecutor's office testified outside the presence of the jury that he had properly served Marcia with a subpoena.

### b.  Sufficiency of the Evidence of Attempted Tampering with Evidence

{¶25} In Cunningham's first assignment of error, he argues that the State presented insufficient evidence to convict him of Attempted Tampering with Evidence.  Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶26} As indicted in this case Attempted Tampering with Evidence is codified in R.C. 2323.02(A) [Attempt] and R.C. 2921.12(A)(1) [Tampering with Evidence]. Criminal Attempt is defined as, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

{¶27} Tampering with Evidence is defined as

**(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:**

**(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]**

R.C. 2921.12(A)(1).

{¶28} On appeal, Cunningham states that the "Attempted Tampering with Evidence" charge came from Cunningham's attempt to conceal the bullets from the revolver. Cunningham contends that the State did not provide legally sufficient evidence that Cunningham attempted to conceal the bullets with purpose to impair their value or availability. Specifically, Cunningham contends that the bullets Cunningham had wrapped in a tissue could have been wrapped before the police were called. In addition, Cunningham contends that the State did not establish that Cunningham was the one who took the bullets out of the revolver. The State counters by arguing that there was a significant amount of evidence

presented from which a jury could properly infer that Cunningham attempted to conceal the bullets with purpose to impair their value or availability as evidence in a proceeding or investigation. We agree with the State.

{¶29} When Cunningham was detained for having the revolver, he was patted down for weapons and placed in the back of a police cruiser. Officers provided testimony that the police cruiser had been checked that day before Cunningham was in it and there were no bullets inside it. After Bobbi Lane informed the officers on the scene that Cunningham may have bullets on him, the officers got Cunningham out of the vehicle to conduct a more thorough search of his person. As they did, they noted that there was a bullet on the rear seat of the cruiser. Cunningham was also found to be holding two bullets wrapped in a white tissue or some kind of rag. In addition, another bullet was found by Cunningham's shoe. Officer Brian testified that the rounds located matched the spent shell casing in the revolver.

{¶30} While Cunningham was not successful in concealing this evidence, a jury could certainly infer that Cunningham had removed the bullets from the revolver and was attempting to get rid of the bullets that he had on him in an attempt to suggest that the revolver was not his.

{¶31} Based on the testimony and exhibits presented, we cannot find that there was insufficient evidence presented to convict Cunningham of Attempted

Tampering with Evidence. Therefore, Cunningham's first assignment of error is overruled.

### c. Manifest Weight of the Evidence

{¶32} In Cunningham's second assignment of error he argues that his convictions for both Attempted Tampering with Evidence and Having Weapons While Under Disability were against the manifest weight of the evidence.

{¶33} The Ohio Supreme Court has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 10, quoting *State v. Thompkins,* 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Thompkins*, *supra*, at 387. In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id.* In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387.

### 1. Manifest Weight: Attempted Tampering with Evidence

**{¶34}** In his second assignment of error, Cunningham contends that even if there was sufficient evidence presented to convict him of Attempted Tampering with Evidence, the conviction was against the manifest weight of the evidence. Cunningham makes no arguments in addition to what he argued related to sufficiency of the evidence; rather, he summarily adds the contention onto the end of his claim that his conviction for Having Weapons While Under Disability was against the manifest weight of the evidence.

**{¶35}** Contrary to Cunningham's unsupported assertion, there was ample evidence, beyond being merely sufficient, from which a jury could conclude that Cunningham attempted, but was unsuccessful, in concealing the bullets on his person from the officers on the scene. Therefore we cannot find that the factfinder clearly lost its way or created a manifest miscarriage of justice, particularly in light of the fact that there was no contrary evidence. Thus Cunningham's argument as to this issue is not well-taken.

### 2. Manifest Weight: Having Weapons While Under Disability

**{¶36}** In his second assignment of error Cunningham also challenges his conviction for Having Weapons While Under Disability as being against the manifest weight of the evidence. As indicted in this case, Having Weapons While Under Disability is codified in R.C. 2923.13(A)(3), and reads

**(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:**

**\* \* \***

**(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.**

{¶37} On appeal, Cunningham argues that several people lived in the East Sixth Street residence, that the revolver was found in Marcia's vehicle, and that only one witness testified that she saw Cunningham put the revolver into Marcia's vehicle. Cunningham contends that the State's evidence that the revolver was his was not enough to support a conviction beyond a reasonable doubt.

{¶38} While it is true that multiple people lived in the residence in question, testimony indicated that Cunningham regularly slept in the bedroom where the revolver was found by a 3-year-old child. That revolver was taken from the child and given to Cunningham. Bobbi Lane testified that she watched as Cunningham placed the revolver in Marcia's trunk. The bullets from the revolver were located on or about Cunningham when he was taken from the police cruiser.

{¶39} In addition, although Cunningham did not testify, audio recordings of his jailhouse conversations with Marcia were played for the jury wherein

Cunningham attempted to pressure Marcia to state that the revolver was hers. Marcia implied during those phone calls that the revolver was not hers. Brandon Murphy and Bobbi Lane both testified that the gun was not theirs, and that they did not know Marcia to own a firearm.

{¶40} Moreover, the jury also heard testimony related to the other elements of Having Weapons While Under Disability. Certified copies of judgment entries detailing Cunningham's two prior felony drug convictions were introduced into the record. In addition, Officer Brian testified that he test-fired the revolver and found that it was a working firearm. On the basis of the evidence presented, we cannot find that the factfinder clearly lost its way or created a manifest miscarriage of justice in convicting Cunningham of Having Weapons While Under Disability.

{¶41} Finally, we would note that Cunningham seems to suggest that the State improperly introduced testimony of the officers stating that they were familiar with Cunningham from prior dealings and that the State improperly indicated in closing arguments that Marcia stated in the jailhouse calls that the revolver was not hers. Cunningham does not support these arguments with any legal authority, and he does not set them out as separate assignments of error. He summarily argues these claims under the guise of being support for his contention that his convictions were against the manifest weight of the evidence. Notably even if these issues were properly set out as separate assignments and supported by legal authority, these issues were not objected to and would be reviewed under

-18-

a plain error standard. However, as they are argued, we find no error here impacting the weight of the evidence. We similarly would find no merit if they were separately argued under plain error or otherwise. Therefore, Cunningham's second assignment of error is overruled.

{¶42} Having found no error prejudicial to Cunningham in the particulars assigned, his assignments of error are overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**