[Cite as *State v. McDonald*, 2026-Ohio-558.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                      No. 115085

v.                                      :

LARRY MCDONALD,                         :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-690934-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew F. Rogalski and Samantha M. Sohl, Assistant Prosecuting Attorneys, *for appellee.*

Susan J. Moran and Michael T. Fisher, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Larry McDonald ("McDonald") appeals from his judgment of conviction, which was rendered after a jury trial. McDonald was convicted of tampering with records, obstruction of official business, tampering with

evidence, dereliction of duty, and telecommunications fraud. After a thorough review of the facts and pertinent law, we affirm.

**Procedural and Factual History**

{¶ 2} At the time of the incidents giving rise to this case, McDonald was a commander in the East Cleveland Police Department. McDonald's codefendant, Anthony Holmes ("Holmes"), was a sergeant in the East Cleveland Police Department.[1] McDonald outranked Holmes.

{¶ 3} This case involved two incidents — the first occurred on March 25, 2022, and the second occurred almost one year later on March 12, 2023. Much of the evidence that formed the charges against McDonald came from McDonald's body camera and its GPS data, police-radio traffic, and surveillance video.

{¶ 4} Codefendant Holmes testified on behalf of the State. McDonald testified in his own defense.

**March 25, 2022 Incident Involving Terron Brown's Fatal Crash**

---

[1] Holmes and McDonald were charged in this case in 2024. Prior to this indictment, Holmes and McDonald were indicted, along with nine codefendants, in Cuyahoga C.P. No. 23-CR-681351. All of the charges against McDonald in the 2023 case were relative to the same incidents that formed the basis for the indictment in this case. Several of the charges against Holmes in the 2023 case were also relative to the incidents that formed the indictment in this case. The charges against McDonald and Holmes in the 2023 case that were related to the incidents relative to this case were dismissed, and they were reindicted in this case. Holmes entered a guilty plea in this case, and McDonald was the sole defendant at trial in this case. Holmes and another codefendant, Ian McInnes, had a joint trial relative to charges not at issue in this case. Holmes and McInnes have pending companion appeals — *State v. McInnes*, Appeal No. 115053 and *State v. Holmes*, Appeal No. 115123.

**{¶ 5}** This incident occurred in the early morning hours of March 25, 2022. At that time, McDonald was conducting traffic control on Euclid Avenue when a vehicle driven by Terron Brown ("Brown") sped by him. McDonald informed East Cleveland dispatch that he was stopping a vehicle on Euclid Avenue. McDonald next informed dispatch that he was trying to "catch up" to a vehicle driving at least 100 m.p.h. eastbound on Euclid Avenue. The evidence demonstrated that McDonald drove over 90 m.p.h. on Euclid Avenue and pursued Brown through the cities of East Cleveland, Cleveland, and Euclid. The evidence further demonstrated that the siren and overhead lights on McDonald's police cruiser were activated. According to McDonald, he only had his overhead emergency lights on. The siren could be heard on audio evidence, however.

**{¶ 6}** Brown ultimately crashed his car in the parking lot of a business in the City of Euclid. McDonald did not have his body camera activated during the pursuit, but the camera automatically activated when the door to his police cruiser was opened. Upon approaching the scene where Brown crashed — which the evidence showed was 28 seconds after the crash — and seeing Brown's body, which had been partially ejected from his car, McDonald exclaimed, "oh boy!"

**{¶ 7}** McDonald maintained that he did not witness the crash and offered two differing explanations as to how he discovered that Brown had crashed: (1) he observed some dust and followed it, or (2) two women flagged him down. There were two women who were nearby the crash site. Both testified and denied flagging McDonald down. Further, surveillance video from the area where Brown crashed

did not show anyone flagging down McDonald but it did capture McDonald approaching the scene as Brown crashed. McDonald maintained that he was not "pursuing" Brown's vehicle; rather, he was just trying to "catch up to it."

{¶ 8} Because the crashed occurred in the City of Euclid, the investigation was handled by the Euclid police. The investigation was led by Euclid police detective Kenneth Horna ("Detective Horna"), and he authored the official police and accident reports, which included statements made by McDonald. Based on McDonald's statements, neither Detective Horna's traffic crash report nor supplemental traffic crash report stated that McDonald was in pursuit of Brown's vehicle. Indeed, Detective Horna wrote in his report that McDonald "stated he was not pursuing the vehicle but attempting to catch up to it with his emergency lights on ('no siren')."

{¶ 9} In his handwritten statement, McDonald stated the following:

On Friday, March 25, 2022, at 0315 hours, I Sergeant Larry McDonald Jr. Badge #0186 [was] assigned to patrol vehicle #3134. I observed a tan color vehicle traveling at a high rate of speed. I would estimate the vehicle to be going at least 100MPH or over. I pulled out to see if I could catch up but was unable due to speed. I continued to follow the large amount of dust and located at Euclid [Avenue] and Chardon Road a traffic crash. It appeared [to be] the vehicle that was going over the speed. I [saw] witnesses on scene.

{¶ 10} McDonald also authored a report for the East Cleveland police. In his report, McDonald stated the following: "I proceeded to travel eastbound on Euclid [Avenue] trying to catch up with this vehicle" and there were "some females in the

roadway flagging me down at this time I observed the vehicle had been involved in an accident."

{¶ 11} Based on McDonald's statements and representations, Detective Horna concluded that McDonald was not in pursuit of Brown at the time Brown crashed. The detective testified that if he had had the correct information at the crash scene, his investigation would have been different. For example, Detective Horna testified that if he had known that McDonald was pursuing Brown, he would have labeled his body-camera evidence differently than he did so that it would have been retained for a longer period of time. The detective also would have requested an accident reconstructionist process the scene and would have requested reports, radio communications, body-camera evidence, and internal policies from the East Cleveland Division of Police.

{¶ 12} Shaun Roth, an FBI special agent ("FBI Agent Roth") on the Cleveland Metropolitan Anti-Corruption Task Force, testified about misrepresentations in McDonald's report vis-à-vis what the forensic and other evidence showed. Further, investigator Robert DeSimone ("Investigator DeSimone"), an investigator from the Cuyahoga County Prosecutor's Office, was involved with FBI Agent Roth in investigating the case. Investigator DeSimone testified about the importance of accurate reporting for police investigations and opined about McDonald's misstatements. For example, Investigator DeSimone found that 28 seconds elapsed from the time Brown crashed and McDonald arrived at the crash scene, leading him

to conclude that McDonald had not been as far away from Brown's vehicle as he claimed.

{¶ 13} As mentioned, McDonald testified. He explained that a pursuit occurs when a law enforcement officer has his or her police cruiser lights and sirens on and a vehicle refuses to stop. The State played the video and audio evidence for McDonald, and McDonald conceded that both the lights and sirens were on. McDonald further admitted that he wanted Brown to stop but Brown did not. Notwithstanding his own definition of pursuit, McDonald maintained that he was not pursuing Brown. According to McDonald, he was merely trying to "catch up" to Brown's vehicle. Regarding his prior statements that two females flagged him down, McDonald testified that that was his "perception."

{¶ 14} McDonald denied that he ever told Detective Horna that his sirens were not activated. He generally denied ever trying to purposely defraud or misrepresent anything relative to Brown's fatal crash.

**March 12, 2023 Incident Involving Marc Trussell Crash**

{¶ 15} At the time of the second incident, East Cleveland police officers were required to stay at the police department — that is, they were not permitted to respond to nonemergency calls. Also at the time, the department's pursuit policy had changed and it prohibited pursuits for minor traffic violations and altogether prohibited pursuits outside of East Cleveland city limits. Further, officers were required to provide notification to dispatch if they were making a traffic stop.

{¶ 16} On the occasion in question, McDonald was working as off-duty security at an East Cleveland bar; he was in police uniform and using his police cruiser. McDonald testified that, although he was off-duty, he remained vigilant that evening because he knew that the other East Cleveland police officers could not respond to nonemergency calls.

{¶ 17} McDonald testified that while outside of the establishment, he saw a car driven by Marc Trussell ("Trussell") commit a traffic infraction and activated his cruiser's lights to pull the car over; Trussell initially stopped. McDonald testified that he was unable to see Trussell's license plate — despite it being illuminated — when Trussell stopped, and he got out of his police cruiser to approach Trussell's car. As McDonald was approaching, Trussell sped off. McDonald got back into his cruiser and, without notifying dispatch, pursued Trussell to the city limits, reaching a speed of 91 m.p.h. McDonald stopped following Trussell when Trussell drove out of the City of East Cleveland and into the City of Cleveland; McDonald made a U-turn and drove away. Trussell crashed his car into a bus stop, garbage can, and fire hydrant. McDonald claimed that he did not see the crash, but his body camera recorded him saying seconds after the crash, "I knew he was going to do that" and laughing. He turned on music as he drove away from the scene. McDonald did not report the incident and returned to the bar where he was working as off-duty security.

{¶ 18} Surveillance video showed that Trussell crashed as he swerved to avoid hitting another vehicle. The video also showed McDonald's police cruiser

pursuing Trussell's vehicle with lights and sirens in the moments leading up to the crash. GPS data from McDonald's police cruiser showed that McDonald had been driving 94 m.p.h. The video showed that McDonald did not turn around until after Trussell crashed. The driver of the vehicle, Trussell, swerved around and called the police. When Cleveland police arrived on scene, the witness informed them that an East Cleveland police car had been pursuing Trussell's vehicle when it crashed and that the police car turned around and left the scene.

{¶ 19} Based on the information the Cleveland police learned at the scene, the Cleveland police contacted the East Cleveland police to obtain information regarding East Cleveland's pursuit of Trussell. The East Cleveland dispatcher informed the Cleveland police that she did not have any information about an East Cleveland police officer being out of the station that evening, but she would check with the officer in charge, codefendant Holmes. Holmes told the dispatcher that no East Cleveland officers had been out that evening; the dispatcher conveyed that information to the Cleveland police.

{¶ 20} Codefendant Holmes testified that at the time he spoke with the dispatcher, he had no reason to believe McDonald, or any other East Cleveland officer, was involved. However, at the suggestion of another officer, Holmes called McDonald to further inquire. At that time, McDonald, apparently unbeknownst to him, still had his body camera activated and two calls between him and Holmes were recorded.

{¶ 21} On the first call, Holmes called McDonald and asked him if he had been driving behind Trussell's car. McDonald said that he had not. Holmes told McDonald that the car crashed and a witness saw a police cruiser turn around. McDonald still denied being involved.

{¶ 22} On the second call, which was initiated by McDonald using his cell phone to call Holmes, McDonald asked Holmes "what he knew." Holmes told McDonald that a witness saw an East Cleveland officer pursue a vehicle, watch the car crash, and thereafter turn around and drive away from the scene. Now McDonald told Holmes that he stopped at a particular street — a distance away from the crash. The GPS data showed McDonald's representation was not true and that he indeed had driven much closer to the intersection where the crash occurred.

{¶ 23} During that second call, Holmes told McDonald that they were "covered," the eyewitness was gone, and the Cleveland police did not get any of the witness's information. McDonald told Holmes that he wanted to go to the crash scene; Holmes advised him not to and should instead take the police cruiser "off the streets" and pretend they knew nothing about the crash. At the end of the call, McDonald told Holmes that he was just trying to get a license plate number. McDonald did not return to the crash scene.

{¶ 24} Cleveland police officer Michael Boyd ("Officer Boyd") responded to the crash scene and, along with his partner, completed a traffic crash report. The report did not include any information about the East Cleveland police's involvement. Officer Boyd testified that had he known about East Cleveland police's

involvement, he would have utilized a specialized accident investigation unit. The Cleveland police also would have sought evidence from the East Cleveland police. Additionally, the Cleveland police would have considered felony charges against Trussell. After his review of the evidence, FBI Agent Roth believed Trussell could have been indicted for felony failure to comply. Investigator DeSimone testified about then recent indictments of other officers in the East Cleveland police department and the department's then-recent no-pursuit policy.

**Indictment, Verdict, and Sentence**

{¶ 25} In April 2024, a Cuyahoga County Grand Jury charged McDonald with numerous crimes. After trial, the jury found him guilty of one count of tampering with records relative to the Brown incident; three counts of obstruction of official business, i.e., two counts relative to the Brown incident and one count relative to the Trussell incident; one count of tampering with evidence relative to the Trussell incident; two counts of dereliction of duty, which was one count for each incident; and one count of telecommunications fraud relative to the Trussell incident.

{¶ 26} After merger of some of the counts, the trial court sentenced McDonald to a total 48-month sentence, which included consecutive terms.

**Assignments of Error**

I.    The trial court deprived Mr. McDonald of his right to due process and fair trial as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution when it allowed the State's

witnesses to provide inadmissible testimony regarding the ultimate issue of guilt.

II. The evidence in this case is legally insufficient to justify Mr. McDonald's conviction, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Constitution of the State of Ohio.

III. Mr. McDonald's convictions are against the manifest weight of the evidence in violation of [his] right to due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution.

IV. The trial court erred in imposing a sentence which was not supported by the record and was contrary to law.

**Law and Analysis**

**No Abuse of Discretion in Allowing Lay Opinion Testimony**

{¶ 27} In his first assignment of error, McDonald contends that the trial court abused its discretion by allowing FBI Agent Roth and Investigator DeSimone's testimonies. Specifically, McDonald contends that the trial court abused its discretion by allowing the witnesses to testify on the ultimate issue of guilt.

{¶ 28} Initially, we note that McDonald cites Evid.R. 702, which governs expert opinion testimony, and case law discussing the same. FBI Agent Roth and investigator DeSimone did not testify as experts in this case. Rather, they provided lay opinion testimony under Evid.R. 701. "Evid.R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay witnesses." *State v. Grajales*, 2018-Ohio-1124, ¶ 60 (5th Dist.), citing *State v. Harper*, 2008-Ohio-6926, ¶ 37 (5th Dist.), citing *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). We therefore review a trial court's determination of the admissibility of

lay witness opinion testimony for an abuse of discretion. *State v. Allen*, 2010-Ohio-9, ¶ 46 (8th Dist.). An abuse of discretion occurs when "a court [exercises] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 29} Evid.R. 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 30} To satisfy the first prong of Evid.R. 701, the opinion of the lay witness must be "'one that a rational person would form on the basis of the observed facts.'" *State v. Mulkey*, 98 Ohio App.3d 773, 784 (10th Dist. 1994), quoting *Lee v. Baldwin*, 35 Ohio App.3d 47, 49 (1st Dist. 1987). Where a law enforcement officer "testified as a lay witness to opinions based on his [or her] experience as a police officer, his [or her] previous investigations, and his [or her] perception of evidence at issue," this first prong is satisfied. *State v. Walker-Curry*, 2019-Ohio-147, ¶ 12 (8th Dist.), citing *Grajales* at ¶ 64.

{¶ 31} The second prong of Evid.R. 701 requires that "the opinion . . . assist the trier of fact in understanding the testimony of the witness or determining a fact in issue." *State v. Sibert*, 98 Ohio App.3d 412, 426 (4th Dist. 1994), citing *Lee* at *id*. Under this prong, a police officer's opinion testimony may be admissible to explain a fact at issue even when it is based on specialized knowledge. *Walker-Curry* at ¶ 13;

*State v. Maust*, 2016-Ohio-3171, ¶ 19 (8th Dist.). Generally, if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and is helpful to determine facts in issue, the testimony is properly admitted as lay testimony under Evid.R. 701. *See Maust* at ¶ 18.

{¶ 32} Here, prior to working in the Cleveland office of the FBI, Agent Roth worked for approximately four and one-half years in Little Rock's FBI office investigating public corruption and white-collar crime. The agent transferred to Cleveland in 2015, and was assigned to the public corruption and civil rights division. For the six years leading up to this trial, FBI Agent Roth was the lead agent and a task force coordinator for the Cleveland Metropolitan Anti-Corruption Task Force. In his position, FBI Agent Roth investigated public officials who were alleged to have misused their positions in some capacity; for example, for their own financial gain or to cover up a wrongdoing. Since 2017, a focus of FBI Agent Roth's work was on the City of East Cleveland.

{¶ 33} Investigator DeSimone began working with the county prosecutor's office in 2013, and at the time of trial was completing his 51st year in law enforcement. Prior to his employment at the prosecutor's office, the investigator had been employed at the county sheriff's office and the Parma police department, where he served as captain in charge of the detective bureau for one year. Since he joined the prosecutor's office in 2013, Investigator DeSimone has worked on public corruption cases.

{¶ 34} On this record, both FBI Agent Roth's and Investigator DeSimone's testimonies satisfied the first prong under Evid.R. 701. Both of the witnesses had an extensive law enforcement background and, in particular, with investigations involving public officials. We also find the witnesses' testimonies were helpful to a clearer understanding of the determination of a fact in issue: whether the evidence bore out McDonald's explanation that he merely made a mistake or was just "sloppy" as opposed to engaging in a cover up.

{¶ 35} Both prongs of Evid.R. 701 were satisfied. Further, the law enforcement officials' testimonies were permissible under Evid.R. 704, which provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Opinion testimony on an ultimate issue is admissible if it assists the trier of the fact. *State v. Irwin*, 2012-Ohio-2704, ¶ 77 (7th Dist.), citing Staff Notes of Evid.R. 704. For example, this court has held that "police officers may testify to the nature and amount of drugs and its significance in drug trafficking." *State v. Young*, 2010-Ohio-3402, ¶ 19 (8th Dist.).

{¶ 36} FBI Agent Roth and Investigator DeSimone testified based on their experiences and observations as veteran law enforcement officials, and their testimonies aided the trier of fact in understanding the testimony presented by the State and in the determination of a fact in issue.

{¶ 37} The trial court did not abuse its discretion by allowing the testimonies of FBI Agent Roth and Investigator DeSimone. The first assignment of error is overruled.

**The Convictions Were Supported by Sufficient Evidence**

{¶ 38} In his second assignment of error, McDonald contends that his convictions were not supported by sufficient evidence.

{¶ 39} When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). We now consider McDonald's convictions under this standard.

**Tampering with Records**

{¶ 40} McDonald was convicted under R.C. 2913.42(A)(2) of one count of tampering with records relative to the March 2022 incident involving Brown's fatal crash. R.C. 2913.42(A)(2) provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is

facilitating a fraud, shall . . . [u]tter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section." R.C. 2913.42(A)(1) prohibits a person from falsifying, destroying, removing, concealing, altering, defacing, or mutilating any writing, computer software, data, or record.

{¶ 41} McDonald's tampering-with-records conviction was based on the traffic crash statement he authored, in which he stated the following:

> On Friday, March 25, 2022, at 0315 hours, I Sergeant Larry McDonald Jr. Badge #0186 [was] assigned to patrol vehicle #3134. I observed a tan color vehicle traveling at a high rate of speed. I would estimate the vehicle to be going at least 100MPH or over. I pulled out to see if I could catch up but was unable due to speed. I continued to follow the large amount of dust and located at Euclid [Avenue] and Chardon Road a traffic crash. It appeared [to be] the vehicle that was going over the speed. I [saw] witnesses on scene.

{¶ 42} McDonald contends that there was no evidence that he acted with "purpose to defraud." The statute prohibits one from acting with "purpose to defraud *or* knowing that the person is facilitating a fraud . . . ." (Emphasis added.) R.C. 2913.42(A)(2). The evidence was sufficient to sustain the conviction under either standard.

{¶ 43} "'Commonly, there is no direct evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances.'" *State v. Rodano*, 2017-Ohio-1034, ¶ 43 (8th Dist.), quoting *In re Horton*, 2005-Ohio-3502, ¶ 23 (4th Dist.). In Ohio, it is well-established that "a defendant may be convicted solely on the basis of circumstantial evidence." *State v.*

*Nicely*, 39 Ohio St.3d 147, 151 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *Nicely* at 150, quoting *Black's Law Dictionary* (5th Ed. 1979).

{¶ 44} At the time McDonald wrote his statement, he had been a law enforcement official for 17 years and had received training in report writing. Indeed, part of his job responsibilities with the East Cleveland police involved reviewing subordinate officers' reports to make sure they were accurately written. Yet, McDonald made a written statement with several misstatements and omissions.

{¶ 45} Specifically, McDonald stated that he was trying to "catch up" to Brown's vehicle. The evidence demonstrated that McDonald was in pursuit of the vehicle, however. McDonald also claimed that it was happenstance that he discovered the crash site — by following a cloud of dust. However, the forensic evidence demonstrated that McDonald was in pursuit of Brown the entire time.

{¶ 46} In addition to McDonald's misstatements, he also omitted significant, important information. Specifically, McDonald failed to mention that he had his overhead lights and sirens activated but Brown failed to stop — which constituted a pursuit by his own definition.

{¶ 47} The State presented sufficient evidence to support McDonald's tampering-with-records conviction.

**Obstruction of Official Business**

{¶ 48} McDonald was convicted of three counts of obstruction of official business; two counts were relative to the Brown incident and one count was relative to the Trussell incident.

{¶ 49} R.C. 2921.31(A) governs obstruction of official business as follows: "[N]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Thus, to sustain a conviction for obstruction of official business, the State is required to prove that the defendant: "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re S.J.*, 2023-Ohio-3441, ¶ 21 (1st Dist.).

{¶ 50} McDonald contends that the State failed to present sufficient evidence that he hampered or impeded a public official in the performance of the public official's duties. We disagree.

{¶ 51} Regarding the Brown incident, Detective Horna, a public official, testified about how McDonald's false statements impacted both how he conducted his investigation and the outcome of the investigation. Specifically, the detective testified that had he known that Brown was subjected to a police pursuit he would

have requested an accident reconstructionist to respond to the scene. Further, Detective Horna would have requested information from the East Cleveland police — their report, pursuit policy, radio traffic, and body-camera footage — to investigate whether the pursuit impacted Brown's crash. But because Detective Horna relied on McDonald's statements, he did not expand his investigation.

{¶ 52} Likewise, regarding the Trussell incident, Officer Boyd testified that had he known that Trussell crashed after a police pursuit, he would have requested that a specialized unit respond to the scene. Further, he would have sought to have Trussell investigated for felony failure to comply rather than just issuing a traffic citation. Similar to the Brown incident, McDonald's statements jeopardized the availability of evidence.

{¶ 53} Regardless of whether McDonald's pursuits of Brown and Trussell were justified as he contends, his actions and statements in the aftermath were not, and they formed the basis of the obstruction-of-official-business convictions, of which the State presented sufficient evidence to sustain them.

**Tampering with Evidence**

{¶ 54} McDonald was convicted of one count of tampering with evidence relative to the Trussell incident. He was convicted under R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall . . . [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or

availability as evidence in such proceeding or investigation . . . ." *See also State v. Straley*, 2014-Ohio-2139, ¶ 11.

{¶ 55} The State presented sufficient evidence that McDonald tampered with evidence regarding the Trussell incident. McDonald was a 17-year veteran law enforcement official with supervisory responsibilities — circumstances alone that demonstrated he knew an official investigation would likely be instituted. The likelihood of his knowledge of an impending investigation became even more apparent after his conversations with codefendant Holmes and upon learning that the East Cleveland police had been implicated in the incident. He did not return to the scene, and he and Holmes agreed that they would act like nothing happened.

{¶ 56} Officer Boyd, Investigator DeSimone, and FBI Agent Roth all testified about how McDonald's actions and statements impeded the investigation. We note that McDonald's lack of success in derailing the investigation did not excuse his efforts — there is no requirement that a defendant be successful in his or her impairment of evidence. *See State v. Flood*, 2019-Ohio-2524, ¶ 32 (10th Dist.), citing *State v. Cunningham*, 2016-Ohio-2986, ¶ 29-30 (3d Dist.) ("[T]hat an offender is ultimately not successful in concealing the evidence does not mean there was insufficient evidence to convict the offender of tampering with evidence."). The State presented sufficient evidence that McDonald, knowing an investigation was imminent, concealed his involvement with the purpose to impair the availability of evidence.

**Dereliction of Duty**

{¶ 57} McDonald was convicted on two counts of dereliction of duty under R.C. 2921.44(B) — one count for each incident. R.C. 2921.44(B) provides that "[n]o law enforcement, ministerial, or judicial officer shall negligently fail to perform a lawful duty in a criminal case or proceeding."

{¶ 58} McDonald contends that the State failed to specify an act that he committed and that he simply had a substantial lapse of due care in discharging his duties. We disagree. Lawful duties of a law enforcement officer include preserving the peace, protecting persons and property, and obeying and enforcing all laws. *See* R.C. 737.11. The State discussed these duties with the jury during its closing argument, and the trial court instructed the jury on them as well.

{¶ 59} Regarding the Brown incident, McDonald failed to provide accurate information about the pursuit. Regarding the Trussell incident, McDonald repeatedly misrepresented the truth. He initially denied pursuing Trussell and told Holmes that he turned around a distance before the crash. The evidence demonstrated, however, that McDonald misrepresented his proximity to the crash and he did so because he knew, as a police officer, it was his responsibility to remain on the scene to, among other duties, determine whether anyone was injured. On this record, the State presented sufficient evidence of McDonald's dereliction of duty as to both counts.

**Telecommunications Fraud**

{¶ 60} McDonald was convicted of one count of telecommunications fraud relative to the Trussell incident. R.C. 2913.05(A), governing the crime, provides that

> [n]o person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

{¶ 61} The statement that formed the basis of this charge was the statement from the East Cleveland dispatch to Cleveland dispatch. According to McDonald, the evidence against him was insufficient because the State did not corroborate the statement with testimony from a Cleveland police detective. McDonald further claims that the evidence was insufficient because the State conflated omissions with knowing, purposeful misstatements.

{¶ 62} The dispatcher who disseminated the information, based on the information Holmes provided her, testified that she must rely on the information the law enforcement officials provide to her. Holmes presumably initially did not have any knowledge of McDonald's involvement because McDonald failed to notify East Cleveland dispatch that he was pursuing Trussell. But by McDonald's own admission, he knew that codefendant Holmes told Cleveland police that the East Cleveland police were not involved with the Trussell incident. Indeed, McDonald and Holmes discussed this in their first phone conversation that evening. Yet

McDonald failed to correct the misinformation he provided to Holmes. The evidence was sufficient to support the telecommunications fraud conviction.

{¶ 63} On this record, all of McDonald's convictions were supported by sufficient evidence. The second assignment of error is overruled.

**The Convictions Were Not Against the Manifest Weight of the Evidence**

{¶ 64} For his third assignment of error, McDonald challenges his convictions as being against the manifest weight of the evidence.

{¶ 65} When considering a manifest-weight-of-the-evidence challenge, this court reviews the entire record and "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at *id.*

{¶ 66} Regarding the Brown incident, McDonald mainly challenges his tampering-with-records conviction that, as mentioned, was based on his written statement. The statement read:

> On Friday, March 25, 2022, at 0315 hours, I Sergeant Larry McDonald Jr. Badge #0186 [was] assigned to patrol vehicle #3134. I observed a tan color vehicle traveling at a high rate of speed. I would estimate the vehicle to be going at least 100MPH or over. I pulled out to see if I could

catch up but was unable due to speed. I continued to follow the large amount of dust and located at Euclid [Avenue] and Chardon Road a traffic crash. It appeared [to be] the vehicle that was going over the speed. I [saw] witnesses on scene.

{¶ 67} According to McDonald, the misrepresentations and omissions in the statement were mere errors exaggerated by the State. Defense counsel argued that to the jury, but the jury did not find it to be so. For the reasons already discussed, we did not believe the jury clearly lost its way and this is not one of the most exceptional cases where the evidence weighs heavily against conviction. The jury had the opportunity to review McDonald's written statement in conjunction with the totality of the evidence, which included body-camera footage, GPS and speed data, surveillance, and witness testimony. When viewing all the evidence together, the jury did not lose its way in determining that McDonald acted with either a purpose to defraud or knowing he was facilitating a fraud by uttering a writing that contained materially false and misleading information.

{¶ 68} Regarding the Trussell incident, McDonald contends that his convictions are against the manifest weight of the evidence because the State relied on a series of omissions he made in his statements. However, the record demonstrates that McDonald made multiple materially false statements. In McDonald's first conversation with codefendant Holmes, he told Holmes he was not behind Trussell's car and that he had turned around. He denied pursuing the vehicle, but the video evidence contradicted his denial. Even by McDonald's own definition of pursuit, he was engaged in a pursuit of Trussell.

{¶ 69} McDonald then initiated the second call to codefendant Holmes to get more information. Even after Holmes told McDonald that a witness saw the car crash and an East Cleveland police officer who had been in pursuit turn around, McDonald did not tell the truth. This time, he minimized his involvement, saying that he turned around well before the crash. Holmes told McDonald that they were "covered" because the witness was gone and the Cleveland police did not get her information. McDonald did not return to the scene.

{¶ 70} Again, the jury had the opportunity to view all the evidence relative to this incident, which included the recording from McDonald's body camera where he laughed and said, "I knew he [Trussell] was going to do that," prior to turning around. The convictions for the Trussell incident did not create a manifest miscarriage of justice, requiring reversal and a new trial.

{¶ 71} McDonald's third assignment of error is overruled.

**The Sentence Is Not Contrary to Law**

{¶ 72} In his final assignment of error, McDonald challenges his 48-month sentence as being contrary to law and excessive.[2] According to McDonald, the trial court failed to consider the purposes and principles of sentencing as set forth under R.C. 2929.11 and 2929.12.

{¶ 73} Appellate review of felony sentences is governed by R.C. 2953.08(G)(2), which states that "an appellate court may vacate or modify a

---

[2] McDonald does not challenge the imposition of consecutive terms.

felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1, 21.

{¶ 74} A sentence within the statutory range is contrary to law when "the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Hinton*, 2015-Ohio-4907, ¶ 10 (8th Dist.). A sentence within the statutory range made after consideration of the sentencing factors and principles is "'presumptively valid.'" *Id.*, quoting *State v. Collier*, 2011-Ohio-2791, ¶ 15 (8th Dist.).

{¶ 75} The trial court is presumed to have considered the factors of R.C. 2929.11 and 2929.12 absent an "'affirmative showing that [the trial court] failed to do so.'" *State v. White*, 2013-Ohio-4925, ¶ 10 (8th Dist.), quoting *State v. Taylor*, 76 Ohio App.3d 835, 839 (2d Dist. 1992). There is no explicit requirement for a trial court to memorialize the specific factors it considered in its journal entry. *State v. Hodges*, 2013-Ohio-5025, ¶ 13-14 (8th Dist.) (trial court's judgment affirmed when the trial court considered R.C. 2929.12 factors at the sentencing hearing and the journal entry stated that the trial court "considered all required factors of the law").

{¶ 76} Here, the terms imposed are within the statutory range and the trial court stated that it considered all the required factors of the law at both the sentencing hearing and in its judgment of conviction. Specifically, at sentencing, the court stated that its decision was

based upon the overriding principles and purposes of felony sentencing, namely to protect the public from future crime by the defendant and to punish the defendant using the minimum sanctions that this Court determines accomplishes those purposes without imposing an unnecessary burden on state or local government resources. To achieve these purposes, the Court has considered the need for incapacitation, deterrence and rehabilitation and the providing for restitution. The Court must and has also considered the seriousness and recidivism factors relevant to the offense and the offender, and the Court is ensuring that the sentence imposed does not demean the seriousness of the crimes, the impact on the victims and the community of East Cleveland, and is consistent with other similar offenses committed by like offenders. Finally, the sentence is not based upon any impermissible purposes; namely the race, ethnic background, gender or religion of Mr. McDonald.

{¶ 77} Likewise, the trial court stated in its judgment of conviction that it "considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11."

{¶ 78} On this record, McDonald's sentence is not contrary to law.

{¶ 79} As to McDonald's excessiveness contention, both the United States and Ohio Constitutions prohibit both barbaric punishments and sentences that are disproportionate to the crime committed. "[I]t is well established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community." (Citations omitted.) *State v. Hamann*, 90 Ohio App.3d 654, 672 (8th Dist. 1993).

{¶ 80} The Ohio Supreme Court has held that "'[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.'" *State v. Hairston*, 2008-Ohio-2338, ¶ 21, quoting *McDougle v.*

*Maxwell,* 1 Ohio St.2d 68, 69 (1964). As mentioned, the terms imposed are within the statutory range. The sentence does not shock the sense of justice in the community.

**{¶ 81}** The fourth assignment of error is overruled.

**{¶ 82}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EILEEN T. GALLAGHER, J., CONCUR